JULIA ANN GENTRY,                    )
                                     )
          Plaintiff/Appellee,        )          Appeal No.
                                     )          01-A-01-9611-CH-00512
v.                                   )
                                     )          Montgomery Chancery
JAMES WALTER GENTRY, III,            )          No.    94-75-573
                                     )
          Defendant/Appellant.       )

FILED

May 14, 1997

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CHANCERY COURT FOR MONTGOMERY COUNTY

AT CLARKSVILLE, TENNESSEE


THE HONORABLE ALEX DARNELL, CHANCELLOR

MARK A. RASSAS
JULIA P. NORTH
Rassas & Rassas
Suite 104, Glenn Building
P. O. Box 361
Clarksville, Tennessee  37041-0361
          ATTORNEYS FOR PLAINTIFF/APPELLEE


FRANK J. RUNYON
MARKLEY RUNYON GILL
P. O. Box 1023
Clarksville, Tennessee  37041
          ATTORNEYS FOR DEFENDANT/APPELLANT

AFFIRMED AS MODIFIED,
AND REMANDED




SAMUEL L. LEWIS, JUDGE

# MEMORANDUM OPINION[1]

This is an appeal by the defendant, James Walter Gentry, III, from a decision of the Montgomery County Chancery Court. Defendant takes issue with the court's decision which awarded the plaintiff, Julia Ann Gentry, a portion of Defendant's stock, ordered Defendant to pay $550.00 per month in child support, and awarded Plaintiff $8,000.00 as her share of the equity in the marital property. Plaintiff also raises the issue of whether the court erred when it awarded Defendant control of the assets of the parties' minor child, William Todd Gentry. The facts out of which this matter arose are as follows.

The parties were married on 9 January 1982. Prior to the marriage, both parties were commissioned officers in the United States Army and were stationed at Fort Knox, Kentucky. Plaintiff has a master's degree in human services and human resources, and Defendant has a master's degree in education. Plaintiff became pregnant after the parties married and resigned her commission. William Todd Gentry was born on 3 May 1983. During the marriage, Plaintiff was active in various military and community volunteer activities. At some point, she began working as a part-time substitute teacher. The Army released Defendant from active duty in 1990. He received approximately $30,000.00 in severance pay.

After Defendant left the Army, the family moved to Chattanooga, Tennessee to live with Defendant's parents. The parties were not getting along at this time. Defendant testified that he put out hundreds of resumes, but could not find work for approximately six months. Thereafter, he took a part-time position with the Tennessee National Guard.

Plaintiff and William moved from Defendant's parent's house to Clarksville, Tennessee because Plaintiff found a full-time job at Fort Campbell. After the parties had been separated three months, Defendant stated he wanted to get the

---

[1]Court of Appeals Rule 10(b):
The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion, it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

family back together and joined Plaintiff and his son in Clarksville. Defendant promised to get counseling and to get a job as part of the reconciliation. Although he failed to get counseling, Defendant continued his work with the National Guard on a part-time basis and obtained a full-time position with the Video Cart Company as a consultant. Unfortunately, the full-time job did not work out because the company went out of business in 1993. Despite Defendant's continuous unemployment history, the parties were able to purchase a home in Clarksville in June 1992.

In June 1994, Defendant went on a National Guard training exercise. He told Plaintiff he would be gone for two or three weeks with the Guard and then for another two weeks where he would be unable to tell her his whereabouts. While Defendant was away, Plaintiff gave notice and left her employment. She and William moved back to her hometown of Rogersville, Tennessee. She left a message for Defendant that she was at her mother's house and had paid all the bills. Plaintiff was employed as a court services counselor at the time of trial. Defendant continued his part-time employment with the Guard and also claimed to be self-employed.

Plaintiff filed a complaint for absolute divorce on 19 July 1994. Plaintiff alleged irreconcilable differences, inappropriate marital conduct, and adultery as grounds for the divorce. Defendant admitted there were irreconcilable differences between the parties, but denied he was guilty of inappropriate marital conduct or adultery. In addition to his answer, Defendant filed a counter-complaint. He too alleged irreconcilable differences, but also alleged Plaintiff was guilty of cruel and inhuman treatment.

The court heard the case on 26 September 1995. During the trial, each party accused the other of inappropriate and odd behavior. Plaintiff claimed Defendant became very depressed after the Army released him from active duty. She alleged Defendant lost interest in personal hygiene and in his marriage and child. She also alleged Defendant had been involved in extra-marital affairs and Plaintiff had contracted chlamydia, a sexually transmitted disease, as a result of Defendant's activities. Plaintiff recounted stories in which she feared Defendant would harm her or William. Plaintiff stated that on one occasion she saw Defendant standing in the backyard nude looking up at the trees. Finally, Plaintiff testified she found hardcore

pornography in Defendant's footlocker. Defendant questioned the veracity of Plaintiff and thought she fabricated information. Defendant also expressed his concerns as to Plaintiff's mental state. He stated she "goes through a series of elations and depressions." He also stated he was concerned about his son because of certain superstitious beliefs held by Plaintiff.

On 23 October 1995, the court entered an interim order. The court determined the issues regarding the value of the Clarksville home and Defendant's income were unanswered and ordered counsel to conduct an appropriate investigation and to report back to the court. The court then awarded custody of William to Plaintiff and awarded Defendant unsupervised visitation. Finally, the court made the following findings as to the stock and William's assets:

> The Court finds that JULIA GENTRY is entitled to One Thousand Two Hundred Eighteen (1218) shares of the Bank of McMinnville stock which is held in trust and there shall be a qualified domestic relation order drawn whereby the bank would sequester the shares denoted to her and place them in a separate account and distribute them to her upon her request, but not more than (20%) per year for the next five (5) years.
> Regarding the Twenty Six Thousand Dollar ($26,000.00) account for the child, JULIA GENTRY has no claim at all on it, no interest in it.

Plaintiff made a motion to place some control or accounting restrictions on William's money on 26 October 1995.

The court entered the final decree of divorce on 29 May 1996. The court awarded Defendant the marital residence and ordered Defendant to pay Plaintiff $8,000.00 for her interest in the real estate. The court also determined Defendant should pay $550.00 per month in child support based on his 1995 income and the child support guidelines. The court restated the portion of the interim order regarding the stock and concluded William's account was William's property.

Defendant filed a motion to alter or amend on 20 June 1996. The court addressed the motion in an order dated 10 September 1996. The court affirmed its holdings as to the child support and the stock. The court clarified its holding as to the marital residence by explaining the $8,000.00 figure "equaled not only her share of the equity in the house, but also her interest in the MFS Fund and the remaining funds

at the Pioneer Bank." Defendant filed his notice of appeal on 23 September 1996.

Defendant's first issue is whether the trial court erred in awarding Plaintiff a portion of the McMinnville Bank stock. The court found Plaintiff was entitled to 1,218 shares of the Bank of McMinnville stock. Defendant insists Plaintiff was not entitled to any portion of the stock because it was his separate property.

> Tennessee Code Annotated section 36-4-121(b) provides:
>
> (1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.
> (B) "Marital property" includes income from, and any increase in value during the marriage, of property determined to be separate property . . . if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.

Tenn. Code Ann. § 36-4-121(b)(1)(A)&(B) (1996). The phrase "any increase in value during the marriage" in section 36-4-121(b)(1)(B) means the reason for the appreciation is irrelevant. *Ellis v. Ellis*, 748 S.W.2d 424, 426-27(Tenn. 1988); *see also Harrison v. Harrison,* 912 S.W.2d 124, 127 (Tenn. 1995) (explaining *Ellis*). "The word 'any' is all inclusive and does not allow exception." *Ellis*, 748 S.W.2d at 426.

A substantial contribution can include "the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors that the court having jurisdiction may determine." Tenn. Code Ann. § 36-4-121(b)(1)(C). "Substantial contributions are ones which are real and significant. They need not be monetarily commensurate with the appreciation in the property's value during the marriage." *Mahaffey v. Mahaffey*, 755 S.W.2d 618, 623 (Tenn. App. 1989). "[C]ontributions need not be directly related to the specific property involved. They are substantial if they enabled the spouse who owns the

property to retain it during the marriage." *Id.* at 623.

Here, the Bank of McMinnville stock was held by Defendant prior to the marriage and was titled in his name alone. Nevertheless, the value of its appreciation during the marriage is marital property subject to division under the foregoing code sections and case law. Plaintiff made a direct effort that substantially contributed to the appreciation and value of the stock. Defendant did not work for approximately six months after he resigned. Thereafter, he worked as a part-time member of the Tennessee National Guard and full-time for less than two years. Plaintiff shouldered the burden of supporting the family during this time. Without Plaintiff's efforts Defendant may have been forced to sell the stock in order to provide for the family. Instead, the parties enjoyed a comfortable standard of living and Defendant was able to keep the stock.

The court determined the increase and value of the stock was marital property and awarded Plaintiff her interest in it. This was a reasonable and proper decision both under the statute and the case law of this state. Although we are of the opinion the court's decision was correct and affirm, we are also of the opinion the court should have given Defendant the option of paying Plaintiff the value of the McMinnville Bank stock and retaining the stock in his name. If Defendant elects this option on remand, the court shall conduct a hearing to determine the value of Plaintiff's share of the stock and shall provide that Defendant may pay Plaintiff the value of the stock over a period of three years with interest at the statutory rate as set forth in Tennessee Code Annotated title 47, chapter 14.

Defendant's second issue is whether the trial court erred in ordering child support payable in the amount of $550.00 per month. Defendant contends this amount is not in conformity with the guidelines and Defendant's current income.

The child support guidelines establish a method for calculating child support based upon a percentage of net income. There is a rebuttable presumption that the guidelines are applicable to cases involving child support. Tenn. Code Ann. § 36-5-101(e)(1) (1996). It is possible for a party to rebut the presumption. Section 36-5-101(e)(1) provides:

> If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

*Id.*

Defendant contends the child support award exceeded the appropriate amount by approximately $100.00 per month. In response, Plaintiff argues the court found Defendant was underemployed and determined the amount of support based on Defendant's potential income. Unfortunately, none of the orders in the record include any findings regarding the amount of Defendant's income or whether he was underemployed. Thus, if the court concluded the evidence rebutted the presumption, then its orders awarding child support failed to comply with Tennessee Code Annotated section 36-5-101(e)(1). It is the opinion of this court that this issue should be remanded to the trial court for a proper determination of the amount of child support to be paid by Defendant each month. Moreover, the trial court shall consider Defendant's current income and any other funds includable as income under the guidelines. Finally, the court shall enter an order which complies with Tennessee Code Annotated section 36-5-101 and the child support guidelines.

We have further considered each of the remaining issues raised by the parties. We are of the opinion the evidence does not preponderate against the findings of the court and there is no error of law.

Therefore, it results that the judgment of the trial court is affirmed as modified, and the cause is remanded for the entry of an order in conformity with this opinion. Costs on appeal are taxed equally to plaintiff/appellee, Julia Ann Gentry, and defendant/appellant, James Walter Gentry, III.

_____
SAMUEL L. LEWIS, JUDGE

-7-

CONCUR:

_____
HENRY F. TODD, P.J., M.S.


_____
WILLIAM C. KOCH, JR., JUDGE